# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DALE HOLMGREN,**<br>Plaintiff,<br>vs.<br>**SUN LIFE AND HEALTH INSURANCE COMPANY,**<br>Defendant. | CASE NO. 17-cv-03028-YGR<br><br>**ORDER GRANTING MOTION FOR JUDGMENT IN FAVOR OF PLAINTIFF**<br>Re: Dkt. Nos. 41, 42 |

Presently before the Court is plaintiff Dale Holmgren's appeal of the denial by defendant Sun Life and Health Insurance Company ("Sun Life") of disability benefits under a long term disability ("LTD") benefits plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. The parties filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56 (Dkt. Nos. 41 ("Plaintiff Motion") and 42 ("Sun Life Motion")), which the Court converted, at the parties' request, to cross-motions for judgment under Federal Rule of Civil Procedure 52 (*see* Dkt. Nos. 51, 52). The Court heard parties' arguments on September 4, 2018.

Having considered the parties' briefing, the administrative record, and the arguments of the parties, the Court **ISSUES** the following determination which constitutes Findings of Fact and Conclusions of Law pursuant to Rule 52(a), and based thereon, **FINDS** in favor of plaintiff Dale Holmgren.

### I.   APPLICABLE LEGAL STANDARD

Plaintiff appeals Sun Life's denial of benefits under ERISA, 29 U.S.C. Section 1132(a)(1)(B), otherwise known as Section 502. A beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim of denial of benefits in an ERISA case "is to be reviewed under a *de novo* standard unless the benefit plan gives the [plan's] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).

The parties agree that the standard of review here is *de novo*. (*See* Plaintiff Motion at 1; Sun Life Motion at 23.) On such a review, the Court conducts a bench trial on the record, and makes findings of fact and conclusions of law based upon that record. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (bench trial may "consist[] of no more than the trial judge reading [the administrative record]"). Plaintiff bears the burden of establishing that he was disabled under the terms of the plan during the claim period by a preponderance of the evidence. *See Eisner v. The Prudential Ins. Co. of Am.*, 10 F.Supp.3d 1104, 1114 (N.D. Cal. 2014). The Court finds that the administrative record here suffices and a trial with live witness testimony is not necessary.[1]

## II. FINDINGS OF FACT

### A. Holmgren's Employment

Plaintiff worked as a Corporate Tax Director for Hitachi America, Ltd. ("Hitachi") from July 1988 until his departure on August 5, 2015. (*See* Dkt. No. 43, Defendant's Opposition to Plaintiff's Separate Statement of Undisputed Material Facts, ("SSF") Nos. 1, 2.) Plaintiff's job required a high cognitive ability, including critical thinking, decision-making, complex problem solving, processing information, evaluating information to determine compliance with standards, and high levels of concentration. (*Id.* No. 3.) Plaintiff stopped working on August 5, 2018. (Administrative Record at SUNLIFE0000148.)[2]

---

[1] Accordingly, the Court **DENIES** plaintiff's request to testify. (*See* Dkt. No 48 at 2.) Moreover, the Court **SUSTAINS** plaintiff's objection to Sun Life's filing of evidence outside the administrative record in its reply brief, namely Exhibits C and D at Docket Number 47. (*See* Dkt. No. 48.)

[2] Hereinafter, all references to the administrative record will take the form of "AR at [Terminal Digits]."

2

**B. Long Term Disability Plan**

One of the benefits of plaintiff's employment with Hitachi was the option to "buy up" to a LTD plan that provided a monthly benefit of 70% of Total Monthly Earnings not to exceed $12,500 per month after Other Income Benefits (hereinafter, the "Plan"). (SSF No. 6; *see also* AR at 75.) Defendant Sun Life issued this group Plan to Hitachi, insured the group Plan, and made claim determinations under the Plan. (*Id.* at No. 7; *see also* AR at 72-102.) Plaintiff exercised the option to participate in the Plan, and, thus, he paid higher premiums and was insured for high benefit amounts. (*Id.* at No. 8; *see also* AR at 18, 24, 1268.)

The Plan defines "Total Disability" as being, during the relevant elimination period and the following twenty-four months, "unable to perform" the Material and Substantial Duties of the Plan-holder's Occupation due to Plan-holder's Injury or Sickness. (*Id.* at No. 9; *see also* AR at 63.) The Plan also defines Plan-holder's Occupation as "the usual and customary employment, business, trade, profession or vocation" that he or she performed as it is generally recognized in the national economy immediately prior to the first date that Total or Partial Disability began. (AR at 62.) The Plan defines "Material and Substantial Duties" as including, but not limited to, the essential tasks, functions, skills, or responsibilities required by employers for the performance of Plan-holder's Occupation. (*Id.*) The Plan further defines "Injury" and "Sickness" as "bodily impairment resulting directly form an accident and independently of all other causes" and "illness, disease or pregnancy," respectively. (*Id.* at 60-61.)

Plaintiff ceased working on August 5, 2015 and submitted to Sun Life his claim for long term disability benefits on December 10, 2015. (*Id.* at 23-31; *see also id.* at 527.) On May 26, 2016, Sun Life denied plaintiff's claim based on their finding that "the medical evidence does not support [that plaintiff] would be precluded from performing the Material and Substantial Duties" of his occupation as a Tax Director, and was, therefore not "Totally Disabled" within the meaning of the Plan. (*Id.* at 529-30.)

**C. Treatment History**

***a. Pre-Disability History of Pain Treatment***

Plaintiff had recurring low back and buttock pain and had received treatment for that pain

3

prior to his last day of work in August 2015. (*See* AR 256-59.) In preparation for a February 2015 appointment with pain management specialist, Dr. Felix Chen, plaintiff drafted a detailed pain history. (*See id.*) Plaintiff described his low back/buttock pain as increasing for the last fifteen years.[3] (*Id.*) He explained that, at various points, this pain spread to the area between his shoulders, his right hip, and his feet. (*Id.*) He enumerated the treatment he sought during this period, including: (1) visiting a chiropractor; (2) referral to orthopedic surgeons and pain specialists; (3) a number of MRIs, beginning around 2005-2008; (4) physical therapy; (5) a spinal surgery in February 2012; (6) a hip replacement surgery in May 2013; (7) spinal injections; and (8) pain relief medication, including prescription NSAIDs, MS Contin and oxycodone. (*Id.*) Through the course of these treatments, various physicians diagnosed plaintiff with (1) degenerative disc disease at L5-S1 lumbar disc; (2) two crushed cervical spine discs (resolved by spinal surgery); (3) piriformis syndrome; (4) degenerative hip disease (partially resolved by hip replacement surgery); (5) lumbar spondylosis; unspecified myalgia and myositis; (6) lumbosacral radiculopathy; (7) sacroiliac dysfunction; and (8) lumbar spine instability. (*See, generally* AR.)

In advance of his February 2015 appointment with Dr. Chen, plaintiff explained that in spite of the treatment he has sought, he has never received 100% relief and his pain has impacted his life. (*Id.* at 258-59.) Specifically, plaintiff said that his pain had (1) limited his social life to visiting with his brother and sister-in-law a few times a week and talking on the phone; (2) lessened his ability to concentrate and work effectively at his job; (3) reduced his sleep to four hours at a time; and (4) limited his ability to walk to four to six blocks two or three times a day. (*Id.* at 259.)

After treating plaintiff in February 2015, Dr. Chen determined that the previous MRI findings, lumbar disc degeneration, and lumbar spondylosis did not provide a cause for plaintiff's pain. (*Id.* at 254.) He recommended a CAT scan-guided needle injection to determine whether plaintiff suffered from piriformis syndrome and concluded that piriformis was not to blame. (*Id.*

---

[3] Elsewhere plaintiff describes his back pain as beginning seven years ago (AR at 118) or "gradually increasing . . . over 10 years" beginning in 2005 (AR at 148). The Court finds these discrepancies should not "call[] into question the credibility of all of plaintiff's recollections," as asserted by Sun Life.

4

at 251, 1035.) Dr. Chen saw plaintiff for another appointment on March 10, 2015, during which plaintiff rated his pain as a seven out of ten. (*Id.* at 250.)

On March 20, 2015, plaintiff began his third round of physical therapy, and his chief complaint was low back and right leg pain that restricted his daily function. (*Id.* at 1148.) During this appointment, plaintiff described his pain as a six out of ten on average, a three out of ten at its best, and an eight out of ten at its worst. (*Id.*) He noted that his pain made it difficult to sleep, sit for longer than ten minutes, walk for more than three blocks, stand for more than forty minutes, and lie flat. (*Id.*)

Plaintiff saw Dr. Chen in May 2015 and described his pain as "about the same to somewhat worse." (*Id.* at 241.) Dr. Chen included in his notes from the appointment that:

> [Plaintiff] relates that he has been relegated to mainly working at home due to the pain, but his job performance has suffered. He recently received his worst job evaluation so far and is concerned regarding his work and his employability in his current state. He asks if disability is appropriate for him, as he has been dealing with this problem for years and has been trying to continue working, but is encountering difficulty.

(*Id.*) Dr. Chen treated plaintiff again in June 2015 and documented "pain radiating down both legs now before which is the right side. Patient reports numbness and tingling bilaterally. Patient reports pain at 8/10 on medication." (*Id.* at 235.) Dr. Chen diagnosed plaintiff with unspecified myalgia and myositis as well as degeneration of the lumbar or lumbosacral intervertebral disc, lumbosacral radiculopathy, lumbosacral spondylosis without myelopathy, sacroiliac dysfunction, and lumbar spine instability. (*Id.* at 237.)

On July 6, 2015, plaintiff returned to Dr. Bobby Tay, who recommended a second spine surgery, a decompression of right L4-L5. (*Id.* at 726.) On July 20, 2015, plaintiff attended an appointment with Dr. Chen, who noted diminishing benefits from the pain medications and a worsening of pain and determined that it was "[r]easonable to take time off until before [sic] surgery due to level of pain." (*Id.* at 233.) On July 27, 2015, plaintiff was evaluated by Dr. Serena Hu, who documented "worsening of right lateral hip pain that radiates to the buttock, posterior thigh, lateral calf, and right lateral aspect of the foot for the last year" as well as pain worsening with sitting and supine and forward flexion, as well as walking limited to a few blocks.

(*Id.* at 700.) Dr. Hu recommended another lumbar MRI. (*Id.* at 701.) Plaintiff underwent the recommended MRI two days later, and the scan showed diffuse mild to moderate facet arthropathy, moderate right facet synovitis at L4-5, a bulge at L5-S1, and other mild degenerative changes. (*Id.* at 714-15.)

On August 6, 2015, plaintiff called Dr. Chen's office and relayed that he was in a lot of pain and felt he could no longer work. In response, and consistent with his July 20 determination that it was reasonable for plaintiff to refrain from working during the period before his surgery due to plaintiff's level of pain, Dr. Chen certified plaintiff's disability. (*Id.* at 231.)

### *b. Post-Disability History of Pain Treatment*

Dr. Tay asked plaintiff to return for a reevaluation on August 12, 2015 because "it isn't apparent that his pain management issues are significant and it is unclear whether or not he had developed new symptoms . . . ." (AR at 694.) During that appointment Dr. Tay determined that plaintiff would benefit from an inpatient stay as "given his chronic pain history in regards to his low back globally, he is probably best served with a 23 hour inpatient stay after his decompression." (*Id.*)

Plaintiff's decompression surgery took place on August 20, 2018. (*Id.* at 454.) Following the surgery, on August 22, 2018, plaintiff posted on his Facebook page that he felt the surgery had "fixed [his] leg pain, which it is mostly designed to do, but not back pain, which is constant." (*Id.* at 328.) Dr. Chen treated plaintiff on September 2, 2015 and documented plaintiff's pain at a nine out of ten, including high levels of discomfort when sitting. (*Id.* at 1029.) When plaintiff returned to see Dr. Chen on September 28, 2015, he noted some pain improvement in his legs, but that he "still has the same back pain." (*Id.* at 227.) On October 1, 2015, plaintiff resumed attending physical therapy. (*Id.* at 1166.) After plaintiff's six-week follow-up examination with Dr. Tay, Dr. Tay noted that plaintiff's pain had "mildly improved with the surgery but still in too much pain to be able to work in his current position." (*Id.* at 682.)

On October 9, 2015, plaintiff emailed his general practitioner, Dr. Gary Zweig, and expressed that he received no relief from his back pain following the decompression surgery. (*Id.* 681.) Plaintiff also noted that Dr. Tay had informed him that, in light of these results, it was

6

unlikely that he would receive any additional relief from a fusion spinal surgery. (*Id.*) He also explained that although his pain was horrible in the morning and gradually got better, he was never out of pain. (*Id.*) Dr. Chen treated plaintiff on October 29, 2015 and noted that plaintiff's pain was a six out of ten. (*Id.* at 223.) Notes from plaintiff's November 4, 2015 physical therapy document that he experienced "severe pain." (*Id.* at 1179.)

In a November 9, 2015 email to Dr. Zweig, plaintiff wrote that he had "until Feb 6th to decide if I'm going to try to go on LT disability." (*Id.* at 675.) He further expressed that he was "still [] having intense pain and stiffness on both sides of [his] body, and am on many narcotics, with very little sleep every night." (*Id.*) He also expressed an interest in seeing other specialists in order to obtain a more definitive diagnosis. (*Id.*) Dr. Zweig referred plaintiff to Dr. Diana Blum, a concierge neurologist. (*Id.*)

Following an evaluation with plaintiff on November 13, 2018, Dr. Blum noted that plaintiff was "currently on heavy doses of narcotics managed by Felix Chen . . . but is still debilitated and is considering long term disability leave as he doesn't see this situation changing." (*Id.* at 669.) She also explained that plaintiff's pain limits his sleep, averaging only two to three hours per night, resulting in exhaustion that affects his ability to concentrate. (*Id.*) She also noted that plaintiff cannot sit in one position for an extended period of time. (*Id.*) Two days later, Dr. Chen's treatment notes document that plaintiff was "about the same" and that the medication prescribed by Dr. Blum did not result in any improvement. (*Id.* at 219.) Dr. Chen recertified plaintiff's disability on December 1, 2015. (*Id.* at 604.) Dr. Chen again recertified disability the following week. (*Id.* at 846-49.)

On February 12, 2016, Dr. Chen reviewed plaintiff's pain history, including treatment with Dr. Blum, and future treatment with a rheumatologist. (*Id.* at 591.) He noted that plaintiff's pain was "about the same" and adjusted plaintiff's medications as necessary. (*Id.* at 591, 594.) On March 9, 2016, plaintiff sought treatment from Dr. Spencer Lowe, a rheumatologist. (*Id.* at 653.) Dr. Lowe diagnosed plaintiff with chronic pain syndrome and assured plaintiff that his pain was not the result of an underling autoimmune disease. (*Id.*) Later that month, on March 17, plaintiff again saw Dr. Chen, who administered a lumbar spine steroid injection and noted that plaintiff's

7

condition was about the same. (*Id.* at 807, 819.)

### c. Post-Denial History of Treatment

Following Sun Life's denial of plaintiff's claim for LTD benefits, plaintiff underwent several MRIs. (*See* AR at 648-51, 642, 634, 940.) Plaintiff sought treatment with Dr. Chen three times in June 2016. On June 10, Dr. Chen documented continued pain and noted that plaintiff had sought treatment with Dr. Hoyman Hong for sacroiliac joint degeneration. (*Id.* at 777.) On June 14, Dr. Chen reviewed plaintiff's "several areas in pain," investigated plaintiff's relationship with his medications, and reviewed his most recent MRI. (*Id.* at 788, 790-91.) On June 15, Dr. Chen performed a bilateral piriformis muscle injection/sciatic nerve block and recertified plaintiff's disability. (*Id.* at 784-85.)

On August 23, 2016, plaintiff again saw Dr. Chen, who confirmed plaintiff's medication refill history and noted that the fluoroscopic evaluation of plaintiff's lumbar spine and pelvic region performed on June 15 indicated pain in the bilateral sciatic notches over the piriformis muscles and the lower back. (*Id.* at 584, 587.)

## D. Claim History

On August 6, 2015, plaintiff called Dr. Chen's office and relayed that he was in a lot of pain and could no longer work. (AR at 231.) Dr. Chen certified disability. (*Id.*) On November 10, 2015, Dr. Chen completed a Department of Labor form certifying that plaintiff was unable to work due to back pain. (*See id.* at 869.) Dr. Chen recertified plaintiff's disability on December 1, 2015. (*Id.* at 604.)

On December 10, 2015, plaintiff's claim for long term disability benefits was submitted to Sun Life. (*Id.* at 23-31.) Dr. Chen recertified plaintiff's disability the following week. (*Id.* at 846-49.) Plaintiff spoke to Sun Life on December 21, 2015 and explained his pain history and that "the daily pain level got to a point where he was not able to do his occupation even working from home. He stated he could not sit for long periods of time and standing became too painful." (*Id.* at 118-20.) Plaintiff also confirmed that had been working from home five days a week for the past three years. (*Id.* at 118.) Sun Life asked plaintiff about his typical day, and plaintiff explained that he did some things around the house and might go out and run some local errands.

(*Id.* at 119.) Sun Life also asked plaintiff what needed to occur for him to return to work, and plaintiff responded that "the pain in his lower back would need to be reduced greatly and at a point where it does not bother him. He stated the pain can be so great at times it is very difficult for him to be able to concentrate and sit even for a short period of time." (*Id.*) On January 20, 2016, Dr. Chen completed a Sun Life attending physician's statement form, in which he described plaintiff as disabled by pain for the foreseeable future. (*Id.* at 189-91.) On February 12, 2016, Dr. Chen reviewed plaintiff's pain history and described it as "about the same." (*Id.* at 591.)

Following plaintiff's claim, Sun Life received a background investigation report and surveillance report regarding plaintiff's activity. (*See id.* at 305-54, 459-81.) The background investigation report, dated March 11, 2016, included plaintiff's ownership of rental properties in Illinois, membership at an athletic club in Burlingame, CA, and social media activity. (*Id.* at 305-06.) The report reflects that plaintiff is very active on social media and often discusses his pain and treatment. (*Id.* at 306, 323-29, 331.)

The surveillance report, dated March 22, 2016, includes surveillance of plaintiff for the five-day period from March 13, 2016, through March 17, 2016. (*Id.* at 459.) The surveillance video shows plaintiff driving, entering and exiting vehicles, walking, standing, sitting, and carrying a very small bag. (DVD: Surveillance Video 3/13-17/2016 Video Highlight Reel (Ogletree Deakins 2018) (on file with the Court).) Although plaintiff does not use any assistive device, such as a cane, he appears to walk with some a somewhat abnormal gait, favoring one side over the other, often leans on nearby structures while standing, and moves from a standing to sitting position, and vice versa, slowly and often relying on the seat for support. (*Id.*)

Sun Life also hired Professional Disability Associates ("PDA"), a peer review company, to provide a paper-only assessment of plaintiff's claim. (*See* AR at 484-520.) Dr. Stefan Muzin, a specialist in physical medicine and rehabilitation, issued his initial findings in a report dated April 15, 2016. (*Id.* at 496-502.) In his initial report, Dr. Muzin found "no objective explanation to explain [plaintiff's] subjective complaints." (*Id.* at 499.) He also noted that "it appears that [plaintiff] has not responded well to the treatments provided as there has been no objective improvement in pain or function." (*Id.* at 501.) Dr. Muzin concluded that "[b]ased on a review of

9

available medical records, review of surveillance video, and discussion with attending physician, [plaintiff] should be able to work eight hour a day, forty hours a week" and that "there is no objective evidence to suggest why [plaintiff] would be unable to work these hours." (*Id.* at 501.) Subsequently, Dr. Muzin issued an addendum report, dated May 10, 2016. (*See id.* at 518-20.) In this addendum, Dr. Muzin noted that he was "not questioning the motivation of [plaintiff] or the legitimacy of previous or current pain complaints[,]" but did not alter his prior conclusion that "based on the available information, . . . [plaintiff] should be able to work . . . ." (*Id.* at 520.)

In a letter dated May 26, 2016, Sun Life denied plaintiff's long term disability claim on the basis of their determination that "the medical evidence does not support [that] [plaintiff] would be precluded from performing the Material and Substantial Duties of [plaintiff's] Occupation as a Tax Director." (*Id.* at 525, 529-30.) On May 31, 2016, plaintiff called Sun Life regarding the denial. (*Id.* at 17.) Plaintiff appealed Sun Life's denial on November 18, 2016. (*Id.* at 572-75.)

Following plaintiff's appeal, Sun Life hired PDA for an additional paper-only medical review and received two reports, one from Dr. Victor Lee, a pain management specialist (*see id.* at 1095-1110), and another from Dr. Alfred Mitchel, an orthopedic surgeon (*see id.* at 114-31). Dr. Lee determined that plaintiff's pain was disabling and prevented plaintiff from performing even sedentary work. (*Id.* at 1109.) Dr. Mitchell determined that plaintiff's pain complaints were unreliable and there was no objective evidence supporting disability. (*Id.* at 1124-25.)

Sun Life then requested plaintiff's physical therapy records, which plaintiff provided along with a statement from himself and from Dr. Chen. (*Id.* at 1135, 1142.) Plaintiff explained that he ceased attending physical therapy because he was discouraged by the results and had exhausted his insurance limits. (*Id.* at 1219.) Dr. Chen clarified that limiting plaintiff's work to sedentary activity was not a solution to his pain. (*Id.* at 1147.)

On May 12, 2017, Dr. Mitchell provided an addendum to his report. (*Id.* at 1235-36.) His assessment remained unchanged, but he noted that plaintiff's reasons for stopping physical therapy were "reasonable." (*Id.*) On May 15, 2017, Dr. Lee submitted an addendum to his report. (*Id.* at 1238-49.) Dr. Lee now determined that plaintiff was limited to sitting, standing, and walking up to one hour in a work day – with the ability to get up and move every 30 minutes for 15-20

1  minutes at a time. (*Id.* at 1245.) Dr. Lee also concluded that plaintiff was "not malingering." (*Id.* at 1248.) Sun Life also sought the opinion of an internal medicine physician, Dr. Robert Cooper, who specifically limited his review to issues related to hypertension and did not opine on plaintiff's pain. (*Id.* at 1258-66.) Sun Life upheld its denial of benefits in a letter dated May 19, 2017. (*Id.* at 1272-91.) Sun Life did not have plaintiff examined at any point during this review process. (*See, generally* AR.) This appeal followed.

### III.  CONCLUSIONS OF LAW

The Court reviews the evidence in the record *de novo* to determine whether plaintiff is disabled under the terms of the Plan. "When conducting a de novo review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (*en banc*) (noting that a court employing *de novo* review "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits"). Plaintiff bears the burden of proof by a preponderance of the evidence, and the Court must evaluate the persuasiveness of the conflicting evidence to make its determination. *See Kearney*, 175 F.3d at 1094-95; *Eisner*, 10 F.Supp.3d at 1114.

Based upon an exhaustive review of the administrative record here, the Court finds that plaintiff has established that he was disabled under the Plan's definition of disability. Plaintiff was, "during [his] Elimination Period and the next 24 months . . . because of [his] Injury or Sickness[,] . . . unable to perform the Material and Substantial Duties of [his] Own Occupation." (AR at 102.) Each of the doctors who *examined* plaintiff determined that he was unable to perform the duties of his sedentary job as a tax director. They based their opinions on functional testing, MRIs, results of surgeries, and their own physical examinations of plaintiff. His condition was degenerative and did not show substantial improvement prior to May 2017, when Sun Life upheld its denial of plaintiff's appeal for LTD benefits.

Sun Life's proffered reason for denying plaintiff LTD benefits is that the objective evidence does not support the severity of plaintiff's pain complaints. (Sun Life Motion at 23-25.)

11

Sun Life also avers that plaintiff's pain complaints are refuted by (1) plaintiff's "active footprint" on the internet and social media; (2) a March 2015 performance review self-evaluation in which plaintiff states that he performed the duties of his occupation at the level of "Meets Expectations" and fails to mention chronic pain as impacting his performance; and (3) the surveillance video in which plaintiff performs "activities in a fluid and unrestricted manner without the use of any assistive devices." (*Id.* at 2.)

A number of factors undermine the foundation for Sun Life's decision that plaintiff was not disabled. The Court considers each in turn.

### A. Requiring Objective Evidence of Plaintiff's Chronic Pain & Dismissing Evidence of Pain as Merely Subjective and Therefore Unreliable

First, Sun Life relies heavily on the conclusions of Drs. Muzin and Mitchell "that the objective evidence, meaning the diagnostic studies, the surveillance, and the physical examination results, does not support the severity of plaintiff's pain complaints" to support its argument that plaintiff is not disabled. (Sun Life Motion at 24; *see also* AR at 529-30 (Sun Life determining that the medical evidence does not support that plaintiff would be precluded from performing the duties of his occupation).) However, "a disability insurer cannot condition coverage on proof by objective indicators where the condition is recognized yet no such proof is possible." *Cruz-Baca v. Edison International Long Term Disability Plan*, 708 Fed.Appx. 313, 315 (9th Cir. 2017) (internal citations omitted).

As an initial matter, the Court is unpersuaded by Sun Life's argument that "unlike chronic fatigue syndrome which cannot be supported by objective evidence, the undisputed evidence in this matter establishes that spine pain is objectively verifiable through MRIs and injections into the nerve group that purportedly is the source of the pain." (Sun Life Motion at 25.) The Ninth Circuit has found that chronic pain, like that of which plaintiff complains, "is an inherently subjective condition." *Cruz-Baca*, 708 Fed.Appx. at 315; *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 (9th Cir. 2008) (criticizing plan's denial of benefits for lack of objective evidence of pain since it is inherently subjective). Sun Life's attempt to circumscribe and distinguish the pain of which plaintiff complains as "objectively verifiable"

12

"spine pain" fails to provide any authority, medical or otherwise, and is, therefore, unconvincing.[4] Sun Life has not provided any reasoning as to why pain originating in the back, neck, and leg area must be limited to orthopedic conditions of the spine.

As noted below, each specialist who examined plaintiff, and whose chart notes can be found in the administrative record, determined that he suffers from severe pain, which impacts his ability to engage in even sedentary activity. *See supra* III. B. Although many of these determinations are based largely on plaintiff's self-reported symptoms, a disability determination may be based on a patient's self-reported symptoms if said reporting is credible. *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905-06 (9th Cir. 2016) (finding that an administrator abused its discretion in denying LTD benefits based on claimant's failure to provide objective evidence of disability where claimant provided subjective complaints corroborated by his treating physicians). Here, plaintiff sought treatment for his pain at least as early as 2008 and continued to seek a firm diagnosis and treatment throughout his disability application and appeal, including three invasive surgical operations. Plaintiff's treating physicians documented an increase in plaintiff's reported pain in August 2015, which continued at least through February 2016 (AR at 230, 591-94.) None of plaintiff's treating physicians questioned the legitimacy of his pain complaints. Moreover, Dr. Muzin, upon whose opinion Sun Life relies heavily, made it clear that he "was not questioning the motivation of the claimant or the legitimacy of previous or current pain complaints." (AR at 520.) Dr. Lee similarly opined that "the claimant is not malingering." (*Id.* at 1248.) Both Drs. Muzin and Lee reviewed the surveillance footage prior to making these determinations. Accordingly, the Court finds that plaintiff's subjective complaints of increased pain are credible.[5]

---

[4] Additionally, the phrase "spine pain" is notably absent from the medical record in this case, suggesting that it is not reference to a specific, objectively verifiable pain condition, as suggested by Sun Life.

[5] The Court is unpersuaded by Sun Life's argument that plaintiff's application for LTD benefits is an attempt by plaintiff to preempt any disciplinary actions resulting from a March 2015 breach of Hitachi's Business Conduct Policy. (Sun Life Motion at 6.)

Moreover, Sun Life's argument that plaintiff's pain has decreased is unconvincing. (See Sun Life Motion at 11-12.) Although plaintiff did undergo several procedures, including two spine surgeries and one hip replacement operation, which did assuage aspects of plaintiff's pain, the administrative record reflects plaintiff's long-standing back pain increased leading up to his

**B. Favoring Consultant's Opinions Over Examining Physicians' Opinions**

Second, Sun Life's decision relied on the opinions of third-party consultants rather than the physicians who examined and treated plaintiff. PDA's consultants, Drs. Muzin, Lee, and Mitchell, only reviewed the records of other doctors and medical testing.[6] While ERISA does not accord special deference to the opinions of a treating physician, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (ERISA does not import treating physician rule from Social Security regulations), courts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file. *See Eisner*, 10 F.Supp.3d at 1115; *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011); *Heinrich v. Prudential Ins. Co. of Am.*, No. C 04-02943 JF, 2005 WL 1868179, at *8 *N.D. Cal. July 29, 2005) (failure of administrator's physicians to examine claimant entitles their opinions to less weight than treating physicians since the nature of the condition at issue produces symptoms that must be evaluated through in-person examination); *see also Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 167 (6th Cir. 2007) (reliance of file reviewers rather than actual physical examination may "raise questions about the thoroughness and accuracy of the benefits determination").

Every specialist who examined plaintiff, and whose chart notes can be found in the

---

last day of active employment and through the relevant period.

[6] Moreover, Sun Life selectively discredits the opinion of Dr. Lee, a PDA consultant who opined that plaintiff's pain rendered him unable "to perform any kind of work, even at a sedentary level of activity" and noted that demanding objective evidence of legitimate pain is unreasonable. (AR at 1248.) Sun Life asserts that Dr. Lee's opinion is "factually inaccurate and not well reasoned." (Sun Life Motion at 21-22.) Specifically, Sun Life asserts that Dr. Lee's opinion is unsupported because he based that opinion on a diagnosis of lumbar spondylosis with chronic intractable low back pain and degenerative lumbar disc disease with lumbar radicular pain and asserted that both diagnoses were documented in the July 29, 2015 MRI, however "[t]he July 29, 2015 MRI does not mention lumbar spondylosis." (*Id.* at 21.) The Court is unpersuaded by this argument as "lumbar spondylosis" and "degrative disc disease" are both general terms that refer to the age-related wear-and-tear and osteoarthritis of the spine, which can include the moderate facet arthopathy and mild bilateral foraminal stenosis identified by the July 29, 2015 MRI. (*See* AR at 714-15; *see also id.* at 1122 (Dr. Mitchell concluding that the July 29, 2015 MRI showed the same).) For the reasons discussed herein, the Court is similarly unpersuaded by Sun Life's reliance on plaintiff's March 2015 performance review to rebut Dr. Lee's conclusions that plaintiff's pain led up to and was responsible for his deteriorating work performance and that plaintiff cannot work due to chronic pain and is therefore disabled. *See, supra* III. C. The Court finds that Sun Life's selective discrediting of Dr. Lee's opinion further undermines its decision to rely only on the opinions of Drs. Muzin and Mitchell.

14

administrative record, determined that he suffers from severe pain which his ability to engage in even sedentary activity. Dr. Chen, a pain specialist with whom plaintiff sought continuous treatment beginning in March 2015, documented plaintiff's pain in March 2015 as pain in his low back and right leg at a level of seven out of ten. (AR at 1035, 250.) Over the course of Dr. Chen's treatment of plaintiff, he documented the expansion of plaintiff's pain to both legs (*id.* at 235-37), the elevation of plaintiff's pain to a nine out of ten in late August 2015 (*id.* at 230), and the maintenance of plaintiff's pain through August 2016 (*id.* at 584-87). Dr. Chen also diagnosed plaintiff with unspecified myalgia and myositis, as well as degeneration of the lumbar or lumbosacral intervertebral disc, lumbosacral radiculopathy, lumbosacral spondylosis without myelopathy, sacroiliac dysfunction, and lumbar spine instability. (*Id.* at 235-37.) Dr. Chen has certified plaintiff's disability on multiple occasions (*see e.g., id.* at 846-49) and noted in his attending physician's statement that plaintiff was not capable of working within the limitations caused by his pain and would not be able to work for the foreseeable future (*Id.* at 190-91).[7]

---

[7] The Court is not persuaded by Sun Life's argument that Dr. Chen has admitted that plaintiff has "sedentary work capacity." In so arguing, Sun Life relies on Dr. Chen's attending physician form on which he checked "Sedentary Capacity," defined as "lifting, carrying, pushing, pulling 10lbs occasionally . . . [m]ostly sitting, may involve standing or walking for brief periods of time," under "Physical Impairment." (*See* Sun Life Motion at 6 (citing AR at 190).) First, elsewhere on the same page Dr. Chen confirms that the plaintiff is not capable of working within the restrictions caused by his pain. (AR at 190.) Additionally, "Sedentary Capacity" is the most restrictive option available on the attending physician form, which appears to have been drafted by Sun Life. (*Id.*) There was no opportunity for Dr. Chen to select an option that plaintiff lacks sedentary capacity. Finally, this description of sedentary capacity does not conflict with plaintiff's own, nearly contemporaneous, account of his capacity, namely, that he told Sun Life on December 21, 2015 that he could not sit for long periods of time and standing had become too painful. He explained that he could do some things around his house and would sometimes go out to run errands locally. (*See id*. at 119.) *See also Young v. Sun Life and Health Ins. Co.*, 285 F.Supp.3d 1109, 1123 (E.D. Cal. 2018) (finding that the same attending physician form "indicates a physical impairment level of sedentary capacity, not sedentary work capacity as Sun Life interprets").

Moreover, Sun Life's argument that Dr. Chen's opinions should be discredited because received selected facts from the plaintiff and "never reviewed the surveillance video" is similarly unconvincing. For the reasons stated herein, Sun Life's interpretation of the surveillance video fails to persuade and it is not at all clear why a treating physician would view such a video. *See, supra* III. D.

Finally, Sun Life's argument that because Dr. Chen's diagnostic notes change over time his opinions are not credible fails. These changes reflect the difficulty of diagnosing pain-related conditions and the physician's use of a diagnosis-by-elimination approach. Moreover, Sun Life misrepresents that Dr. Chen received "repeated requests" to opine on whether plaintiff was "able to perform the substantial and material duties of his sedentary occupation." (Sun Life Motion at 14.) The record shows two reports from Dr. Chen that each contain identical language related to this inquiry and other issues, which suggests that Dr. Chen used the prior report and added to it to

Dr. Bobby Tay, an orthopedic surgeon who performed two spine surgeries and conducted at least 5 MRIs on plaintiff, recommended that plaintiff's second surgery be accompanied by a 23-hour inpatient hospital stay due to plaintiff's "chronic pain history in regarding to his low back and globally." (*Id.* at 694.) Following plaintiff's second spine surgery, Dr. Tay wrote to plaintiff's general practitioner that plaintiff "still has leg pain," which "[m]ildly improved with surgery but [is] still in too much pain to be able to work in his current position."[8] (*Id.* at 682.) Dr. Thomas Vail, another orthopedic surgeon who performed a hip replacement on plaintiff in May 2013, noted that following his hip replacement procedure, plaintiff had been more active but continued to require opiate pain medication. (*Id.* at 415.) A third orthopedic surgeon, Dr. Sibel Deviren, wrote that plaintiff's "axial lumbar spine pain is the major limitation for him at this point. He has failed to respond to conservative treatments. His activities of daily living are limited because of the pain." (*Id.* at 384.)

Another orthopedic surgeon, Dr. Serena Hu, noted that in July 2015 plaintiff experienced a worsening of his "right lateral hip pain that radiates to the buttock, posterior thigh, lateral calf, and right lateral aspect of the foot in the last year" and that he is "only able to tolerate walking a few blocks." (*Id.* at 700.) Dr. Hu also examined plaintiff and determined that plaintiff "walks with a normal gait, toe walk, and tandem gait" but is "unable to heel walk" and has "subjective weakness to right single leg deep squats and calf raises." (*Id.* at 701.) She also found that plaintiff "has pain to palpation in the naraspinous muscles into the sacrum" and that plaintiff's most recent MRI showed a small disc bulge and subarticular stenosis at L4-5. (*Id.*)

Dr. Diana Blum, a neurologist with whom plaintiff sought treatment for chronic back pain

---

generate the latter one. (*See* AR at 215, 223.)

[8] Sun Life does not persuade in its argument that plaintiff's treating orthopedic surgeons, Drs. Deviren, Vail, and Tay, have "provided nothing in support" of plaintiff's claim. Sun Life points to Dr. Mitchell's notation that "[t]here is no assessment of functionality or restrictions from the primary orthopedic spine surgery provider." (Sun Life Motion at 9 (citing AR at 1125).) However, all three physicians note that plaintiff's pain has limited his activity. (AR at 384, 415, 682.) Moreover, Sun Life's suggestion that the lack of "documented limitations and restrictions" establishes that plaintiff did not have any significant increase in pain is without merit. Sun Life provides no authority for the argument that if a patient complains of increasing pain, a treating physician must instruct the patient to limit his or her movement.

16

in November 2015, noted that plaintiff's pain had been getting progressively worse. (*Id.* at 669.) She also noted that plaintiff averages only two to three hours of sleep a night due to his pain and is exhausted as a result, which affects his ability to concentrate, and that plaintiff cannot sit in one position for any extended period of time due to his pain. (*Id.*)

Finally, Dr. Spencer Lowe, a rheumatologist who examined plaintiff in March 2016, diagnosed plaintiff with degeneration of lumbar or lumbosacral intervertebral disc and chronic pain syndrome and ruled out the possibility of an autoimmune disease. (*Id.* at 653.) Dr. Lowe also noted plaintiff's frustration that his pain was not improving. (*Id.*)

### C. Relying on Plaintiff's Performance Review as Evidence of Capacity to Work

Third, Sun Life argues that plaintiff's March 2015 self-assessment, in which he concluded that he performed his job at a level of "Meets Expectations," establishes that "any increase in pain [plaintiff] experienced during these two years (2013-2015) did not impact his job performance." (Sun Life Motion at 4.) Sun Life further asserts that by describing his contributions and accomplishments therein, plaintiff "admits that he was able to perform the physical and cognitive requirements of his occupation." (*Id.* at 4-5.) Finally, Sun Life points to the fact that "plaintiff mentioned nothing in his self-assessment about chronic pain or difficulties he purportedly had performing his occupational duties due to chronic pain." (*Id.* at 5.)

The Court is unpersuaded by Sun Life's argument. As a preliminary matter, Sun Life does not provide any authority for the use of a self-assessment of job performance to rebut a claim of disability. Accordingly, the Court is not convinced that it is reasonable to expect an employee completing a job performance self-assessment to disclose personal health issues or the impact thereof on his or her ability to do his or her job. Moreover, Hitachi's portion of plaintiff's March 2015 job performance assessment appears consistent with plaintiff's reported increase in pain. Hitachi's March 2015 assessment of plaintiff's performance noted that he needed to "increase [his] overall contribution and visibility" to the tax department and staff and "be available and alert during working hours." (AR at 970.) The assessment also directed plaintiff to "take back work [he] had passed down to [his] subordinates and carry [his] fair share of the workload." (*Id.*) These critiques are consistent with an employee who is struggling to meet his employer's expectations

1  due to significant pain and difficulty concentrating.

### D. Relying on Surveillance Video & Social Media Activity as Evidence of Physical and Cognitive Capacity to Work

Finally, Sun Life argues that plaintiff is physically and cognitively able to do his job and is therefore not disabled within the meaning of the Plan. (*See* Sun Life Motion at 11-13.) Sun Life points to the surveillance video as evidence that "plaintiff can sit, stand, and walk as he sees fit, the functional capacity he needs to perform his job duties." (*Id.* at 12.) Specifically, Sun Life characterizes plaintiff's activity in the surveillance video as (1) sitting for thirty minutes with no sign of discomfort or impairment; (2) standing and smoking with no apparent distress; and (3) walking at a brisk pace, without a cane, and with no problems with gate or other apparent distress. (*Id.* at 11-12.) As a preliminary matter, the Court does not agree with Sun Life's characterization of the surveillance footage. *See supra* II. D.

Moreover, even accepting as correct, *arguendo*, Sun Life's characterization, the surveillance footage does not "establish," as Sun Life asserts, that "plaintiff can sit, stand, and walk as he sees fit" and therefore has "the functional capacity he needs to perform his job duties." (*See* Sun Life Motion 12.) At most, the surveillance footage establishes that plaintiff can sit for 30 minutes, stand for 10 minutes or less, and walk short distances. This does not establish that he can perform the functions of his job as a tax director.

Sun Life also argues that plaintiff is not cognitively impaired and is therefore able to work. (Sun Life Motion at 12-13.) In support of this argument, Sun Life relies primarily on plaintiff's activity on social media, including his comments on "complex topics of economics, diplomacy, and politics." (*Id.*) Sun Life provides no authority to support its argument that social media activity is evidence of cognitive ability, and the Court is not persuaded that an individual's personal musings so provide. Sun Life also argues that Dr. Chen's notation that plaintiff was "cognitively normal" during each of plaintiff's visits supports its argument that plaintiff is cognitively capable of doing his job. (*Id.* at 12.) However, Dr. Chen's basic medical evaluation of plaintiff's cognitive function does not establish that plaintiff can perform his job, which required a high cognitive ability, including critical thinking, decision-making, complex problem solving,

18

processing information, evaluating information to determine compliance with standards, and high levels of concentration. (*See* SSF No. 3.)

**IV. DISPOSITION**

Upon *de novo* review of the record, the Court finds that plaintiff has established by a preponderance of the evidence that he was disabled under the terms of the Plan during the relevant period.

The parties shall, within thirty days of the date of this Order: (1) meet and confer to resolve the amount of disability benefits due plaintiff, and (2) submit a proposed judgment consistent with the terms of this Order.

This Order terminates Docket Numbers 41 and 42.

**IT IS SO ORDERED.**

Dated: December 5, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**